## FISHER v. TRADESMEN'S NAT. BANK.

(Circuit Court of Appeals, Second Circuit. December 3, 1894.)

### No. 17.

NATIONAL BANKS—CASH RESERVE—FRAUD.

The S. National Bank of Philadelphia obtained from the T. National Bank of New York the discount of a large amount of commercial paper, under an agreement by the S. Bank that it would not draw against the apparent proceeds of such discount, and that the paper might be charged back before, at, or after maturity. In reports subsequently made to the comptroller of the currency, the S. Bank included the proceeds of such discount, on deposit in the T. Bank, as part of its lawful money reserve, one-half of which it was permitted by statute to keep in "cash deposits" in New York. *Held*, that, though such report, representing a deposit not immediately available as a cash deposit, was a fraud on the part of the S. Bank, the legality of its contract with the T. Bank was not affected by such fraud, and the T. Bank could not be required to pay over the proceeds of the discount in advance of the maturity of the paper.

In Error to the Circuit Court of the United States for the Southern District of New York.

This was an action by Benjamin F. Fisher, as receiver of the Spring Garden National Bank, against the Tradesmen's National Bank, to recover a balance of deposit. Judgment was rendered in the circuit court for the defendant. Plaintiff brings error.

Silas W. Pettit, for plaintiff in error.

Charles E. Rushmore and Elihu Root, for defendant in error.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The Spring Garden National Bank of Philadelphia was taken possession of by the bank examiner by direction of the comptroller of the currency on May 8, 1891, it being then insolvent. The plaintiff in error was duly appointed its receiver. On the day of its failure there was standing to the credit of the Spring Garden Bank on the books of the Tradesmen's National Bank of New York a balance of deposit account amounting to $88,592.36. To recover that sum this action was brought.

The evidence shows that the sum thus standing to the credit of the Spring Garden Bank was the proceeds of the discount of three separate lots of notes, amounting in each case to about $50,000, made on December 31, 1890, January 31, 1891, and April 7, 1891, respectively, and that such discounts were obtained under an agreement by the Spring Garden Bank that it would not draw against the apparent proceeds of the discounts, and that the notes discounted could be charged back "before, at, or after maturity." By exceptions, duly noted, to the admission of evidence of this agreement, and to the direction of a verdict, for the defendant, plaintiff in error raised the point that such agreement was a fraud upon the banking act, contrary to public policy, and therefore void. The national bank act provides that every national banking association in Philadelphia "shall at all times have on

hand, in lawful money of the United States, an amount equal to at least twenty-five per centum of the aggregate amount of its notes in circulation and its deposits" (Rev. St. U. S. § 5191), and also that it "may keep one-half of its lawful money reserve in cash deposits in the city of New York" (Id. § 5195); and, the better to enable the comptroller of the currency to see that these provisions are complied with, such banks are required to "make to the comptroller of the currency not less than five reports during each year, according to the form which may be prescribed by him. * * * Such report shall exhibit in detail, and under appropriate heads, the resources and liabilities of the association at the close of business on any past day by him specified, and shall be transmitted to the comptroller within five days after the receipt of a request or requests therefor from him, and in the same form in which it is made to the comptroller shall be published in a newspaper published in the place where such association is established." Id. § 5211. It appears that the Spring Garden Bank entered upon its books the proceeds of these discounts thus deposited with the Tradesmen's Bank as part of its "lawful money reserve" on deposit in New York City, and so reported them in its returns made to the comptroller of the currency. But such action by the Spring Garden Bank, subsequent to the making of the contract and the discount of the notes, in no way affected the legality of that contract. It was not unlawful or contrary to public policy for it to agree with defendant that the latter should credit it with the proceeds of the discounts, but should not be required to pay them over, except as the discounted paper might itself be paid. That it afterwards took advantage of the transaction to represent to the comptroller of the currency and the public that a deposit not immediately available to it was an actual cash reserve was a fraud; but the Tradesmen's Bank was no party to such fraud, and the rights which it acquired under its contract with the Spring Garden Bank are in no way impaired by the latter's subsequent dishonesty. At the time of the failure, therefore, the Spring Garden Bank was not entitled to demand payment of the $88,592.36, or any part thereof, in advance of the maturity of the discounted notes, and the receiver stands in no better position. The judgment of the circuit court is affirmed.